**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

**JULIANA CAROLINE PIRES,**

**Petitioner,**

**v.**

**MARKWAYNE MULLIN, et al.,**

**Respondents.**

**CASE NO. 2:26-CV-370-KKC**

**OPINION and ORDER**

*** *** ***

This matter is before the Court on Petitioner Juliana Caroline Pires' Petition for Writ of Habeas Corpus. (R. 1.) For the following reasons, the Court will deny the Petition.

## I. FACTUAL BACKGROUND

Pires is a Brazilian citizen. (R. 1 at 3.) She lawfully entered the United States with a F-1 student visa on January 1, 2020, to pursue a bachelor's degree at Corban University in Salem, Oregon. (R. 5-1 at 2.) Pires' visa authorized her to remain in the United States for a temporary period not to exceed July 17, 2021. (*Id.*)

On July 26, 2026, Immigration and Customs Enforcement (ICE) arrested Pires at the Cincinnati/Northern Kentucky International Airport based on a TSA domestic flight lead, which triggered an I-200 warrant for arrest. (R. 5-2.) ICE transported Pires to the Campbell County Detention Center in Newport, Kentucky, (R. 5-1 at 2.) and served her Notice to Appear before an immigration judge for removal proceedings pursuant to Sections 237(a)(1)(B) and 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"; 8 U.S.C. §§ 1227(a)(1)(B), 1227(a)(1)(C)(i)). (R. 5-3.) She is currently detained under INA § 236 (8 U.S.C. § 1226) while awaiting a final removal decision.

Pires applied for asylum and withholding of removal on August 5, 2026. (R. 1-4 at 75–86.) That same day, she appeared before Immigration Judge Kelly S. Johnson for a custody redetermination hearing under 8 C.F.R. § 1236. (R. 1 at 4.) At the hearing, Petitioner–with the assistance of counsel–was permitted to testify to her contacts and history in the United States and provide evidence supporting her petition for release on bond. (R. 5 at 4.) The Government in turn pointed to the inadequacy of her proposed bond sponsors, her inability to show a fixed, stable address, and her disregard for the terms of her student visa as evidence that Pires could not be trusted to appear at future hearings if released from custody. (R. 5 at 4.) In a summary order, issued the following day, Judge Johnson denied Pires' request for change in custody status, citing her as a "flight risk," and advised her of her right to appeal to the Board of Immigration Appeals. (R. 5-4.) Pires declined to appeal. (R. 5 at 2.)

On September 9, 2026, Pires filed the instant petition in this Court. (R. 1.) She argues that her bond hearing was constitutionally insufficient as it "failed to afford the impartial tribunal and reasoned, individualized determination the Due Process Clause requires." (R. 1 at 1.) Pires further argues that her continued detention "is the result of a biased system that cannot be trusted to uphold due process under Fifth Amendment standards." (R. 1 at 20.)

## II. ANALYSIS

Rather than attacking the Immigration Judge's bond decision outright, Pires takes care to frame her petition as a challenge to the "constitutional adequacy" of the bond redetermination process. (R. 6 at 2.) She claims her bond denial is the unlawful product of a system that deprives aliens undergoing removal proceedings the basic rights afforded by the Due Process Clause of the Fifth Amendment, (R. 6 at 8.) and as such, believes she is entitled to federal habeas relief.

### A. The Writ of Habeas Corpus

At its core, the writ of habeas corpus provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). This relief is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A district court may grant a writ of habeas corpus to any person who shows they are detained within the court's jurisdiction in violation of the Constitution or the laws and treaties of the United States. 28 U.S.C. § 2241(c)(3). In making such a showing, "the petitioner 'has the burden of establishing [their] right to federal habeas relief and of proving all facts necessary to show a constitutional violation.'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States [. . .] Section 2241, by its terms, requires nothing more.").

**B. Pires is Detained Under 8 U.S.C. § 1226(a)**

8 U.S.C. § 1226 authorizes the Government to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States. Under this provision, the Government may continue to detain the arrested alien or release them on bond/conditional parole. § 1226(a)(1)–(2). Petitioner does not dispute, and the Court likewise finds, that Pires is subject to the discretionary detention provisions of § 1226.

**C. Jurisdiction**

Because § 1226 applies, Pires' habeas petition is subject to § 1226(e). Subsection (e) provides that, "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Although the text of the statute refers to the Attorney General, Congress has empowered the Secretary of Homeland Security to enforce

the INA. *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 398 n.2 (2019) (citations omitted). Thus, the Court's review is limited to whether the procedures employed at Pires' bond hearing satisfied the requirements of the Fifth Amendment.

The Government argues this Court lacks jurisdiction under § 1226(e) to review the Immigration Judge's (IJ) decision. (R. 5 at 2.) In her petition, Pires challenges the IJ's custody order in that it "announced a flight-risk finding without articulating any reasoning or engaging the substantial evidence of community and family ties in the record[.]" (R. 1 at 1–2.) She also alleges the order's "bare, conclusory flight-risk finding" was based on "factors – such as unlawful status – common to every noncitizen who appears for a custody redetermination." (*Id.* at 5.) This, Pires argues, indicates she was not afforded an impartial, reasoned, or individualized custody determination. (*Id.*) At their core, these allegations attack the IJ's decision directly and cannot be entertained by the Court as the Sixth Circuit has found such arguments improper under § 1226(e). *Trejo v. Bullock*, No. 26-5186, 2026 WL 2057094, at *2 (6th Cir. May 14, 2026) ("To the extent [petitioner] challenges the 'IJ's total disregard for overwhelming [. . .] evidence that rendered a flight-risk finding irrational,' such arguments challenging the merits of the IJ's decision and the IJ's exercise of discretion fall outside our jurisdictional reach."). Accordingly, to the extent that Pires asks this Court to grant her petition based on the merits of the IJ's decision, her request is denied.

However, this Court can review whether the bond hearing itself upheld the Fifth Amendment's guarantee of procedural due process. The Fifth Amendment's Due Process Clause requires the government to provide due process of law before it deprives someone of "life, liberty, or property." *Dept of State v. Muñoz*, 602 U.S. 899, 910 (2024). While individuals unlawfully present in the United States possess due process rights, those rights are not co-extensive with the rights of U.S. citizens and exist within the bounds set by rule and statute as per "the Government's sovereign authority to set the terms governing the admission and

exclusion of noncitizens." *Id.* at 911–12. In the context of an immigration detention hearing, courts consider whether the hearing was "a real one, not a sham or a pretense." *Palko v. Connecticut*, 302 U.S. 319, 327 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969). A "real" hearing in the sense "required by the Due Process Clause must be 'meaningful' and 'appropriate to the nature of the case.'" *Bell v. Burson*, 402 U.S. 535, 541-42 (1971) (citations omitted). In a pre-removal bond hearing, a meaningful hearing must involve consideration of the alien's risk of flight and danger to property or persons. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); 8 C.F.R. § 1236.1(c)(8). To this end, Pires argues that Judge Johnson could not and did not give independent and impartial consideration to evidence presented at her hearing. (R. 1 at 7.)

**D. Due Process Claims**

In her petition, Pires makes multiple, overlapping claims in an effort to show her hearing was a sham. She claims that:

1. Immigration courts are not independent, adjudicative bodies as the Executive Branch oversees both prosecution (under the Department of Homeland Security) and adjudication (under the Department of Justice); (R. 1 at 7–8.)
2. Executive Office for Immigration Review ("EOIR") policy and messaging supports nationality-based targeting for removal and skews adjudication against noncitizens; (R. 1 at 15–18.)
3. Radical restructuring of the Board of Immigration Appeals ("BIA") appellate process frustrates meaningful review; (R. 1 at 18–19.)
4. Appointment of unqualified temporary IJs and military lawyers as replacement IJs violates federal law and "dramatically alter[s] the competence and neutrality of adjudicators[;]" (R. 1 at 13–15.)
5. Wide-scale realignment of personnel within the EOIR and BIA has resulted in overwhelming rates of Pro-Government decisions; (R. 8–11.)
6. Continued employment for IJ and BIA members is conditioned on decisions denying relief and ordering removal, "inject[ing] direct personal and pecuniary interest into their decision making[;]" (R. 1 at 12.) and
7. IJ Johnson's bond denial rate is a statistical outlier, indicating clear bias in favor of the Government. (R. 1 at 19.)

To substantiate these claims, Pires presents a myriad of press releases, news articles, social media posts, statistical analysis, and declarations by former immigration judges to

show institutional bias against aliens within the nation's immigration courts. (*see* R. 1-5 through 1-16.)

Focusing on Pires' individual bond hearing, the evidence presented does not support her claim that the hearing was a sham or that alleged systemic issues had any direct impact on the outcome. First, the temporary assignment of unqualified/military lawyers as IJs had no bearing on Pires' custody hearing. The IJ who conducted her hearing is a permanent appointee (serving as an IJ since 2018), with eight years of prior experience in immigration law with ICE/DHS, and is not a member of the Judge Advocate General's Corps. Second, evidence of nationality-based targeting cited is irrelevant to this case. Pires offers reports of immigration efforts targeting Somali migrants as examples of institutional bias. (R. 1 at 18.) Pires however, is a Brazilian national and fails to provide any parallel evidence of bias towards Brazilian citizens that could have impacted her right to a fair hearing. Third, arguments regarding the appellate process are inapplicable as Pires failed to appeal her bond denial to the BIA. While the evidence presented to substantiate claims of systemic bias is extensive and appears to correlate to a rise in negative outcomes for immigration detainees, Petitioner fails to tie this evidence to her particular case in any way that indicates a direct, procedural due process violation.

As for Pires' claims that organizational realignment and institutional pressures create an environment where IJ's are compelled to rule in favor of the Government, this argument strikes closer to the heart of this matter. Pires provides evidence showing Judge Johnson's denial rate at an alleged 99.52% in favor of the Government. (R. 1 at 19; *see also* R. 1-16 at 4.) Even accepting Pires' statistical evidence as accurate, a high bond-denial rate alone does not establish bias. Courts within this district have repeatedly rejected similar claims absent evidence linking the asserted bias to a procedural deficiency in the petitioner's own proceeding. *See, e.g.*, *Rodriguez v. Fields,* No. 26-117-DLB, 2026 WL 1557479, at *7–8 (E.D.

Ky. June 2, 2026) ("Even accepting that [the IJ] denies bond at a higher rate than most IJs, the Court is unable to conclude that these denials resulted from a bias against petitioners, rather than the facts at play in each case."); *J.Z.S. v. Fields*, No. 26-80-DLB, 2026 WL 1662582, at *3 (E.D. Ky. June 9, 2026) ("The mere fact that IJ Johnson has a high bond-denial rate cannot establish that he lacks neutrality."); *Fnu v. Warden*, No. 2:26-cv-247-KKC, 2026 WL 2226358, at *3 (E.D. Ky. Aug. 3, 2026) (holding that statistical evidence and online news articles were insufficient to prove bias in petitioner's specific immigration case). Denial rates can be shaped by various factors including the types of cases on the IJ's docket, the detention status of the immigrants seeking bond, the percentage of detainees represented by counsel, or even the location of hearings assigned to the judge. To be eligible for relief, Pires must clearly connect her broad claim that IJs (and specifically Judge Johnson) are biased to a specific, procedural deficiency in her case.

A review of the record indicates that Pires did receive a constitutionally adequate hearing and that the IJ considered the evidence presented before making a custody determination. In her petition, Pires confirms that she was allowed to give testimony, present evidence, and rely on the assistance of counsel. (R. 1 at 5.) In response the Government presented facts calling into question whether Pires could be relied upon to appear at future hearings, if released from pre-removal detention. (R. 5 at 4.) Rather than ruling from the bench, IJ Johnson then took additional time to review the evidence and circumstances in Pires' case before ultimately deeming her a "flight risk" and denying release on bond.

The undisputed record pertaining *directly* to her hearing demonstrates that Pires received all the process she was due. Notwithstanding assertions that the outcome of the hearing was predetermined, she had a meaningful opportunity to present her case and respond to the Government's arguments with the assistance of retained counsel. She also had the opportunity to appeal the IJ's decision but declined to do so. While she may disagree with

how the IJ considered the evidence or with the hearing's outcome, she may not compel this Court to substitute its judgement for the IJ's based solely on general claims of institutional bias. To do so would be an overreach of the Court's limited authority under 8 U.S.C. § 1226(e).

**E. Collateral Claims**

Finally, to the extent Pires attacks the overall structure of the nation's immigration system or its administration under the Administrative Procedure Act ("APA"), these collateral claims are not a suitable basis for federal habeas relief. This is because claims for relief which "'necessarily imply the invalidity of' [the Petitioner's] confinement[,]" (i.e. habeas corpus) cannot be combined with other civil claims in a single case. *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("Challenges to removal under the [Alien Enemies Act], a statute which largely 'preclude[s] judicial review,' must be brought in habeas."); *Singh v. Noem*, No. 2:25-cv-157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026) (finding APA review inapplicable where Petitioner sought relief from continued immigration detention). Moreover, "[t]o state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court." *Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006) (citing 5 U.S.C. § 704). Because habeas corpus provides an adequate remedy for unlawful Government detention, any attempt to bring parallel claims for relief under the APA is a non-starter.

## III. CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS that Juliana Caroline Pires' petition for writ of habeas corpus under 28 U.S.C. § 2241 (R. 1) is DENIED.

This 12th day of November, 2026.

**Signed By:**
***Karen K. Caldwell*** KKC
**United States District Judge**